IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 19, 2002 Session

## STATE OF TENNESSEE v. JAMES McCLENNON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-A-533      Cheryl Blackburn, Judge**

_____

**No. M2002-00153-CCA-R3-CD - Filed June 24, 2003**

_____

The defendant was convicted of theft of property over $10,000, felony evading arrest with risk of death or injury, and felony reckless endangerment. The trial court merged the reckless endangerment conviction with the evading arrest conviction, and sentenced the defendant to fifteen years as a persistent offender for the theft conviction and twelve years as a career offender for the felony evading arrest conviction, the sentences to be served consecutively. On appeal, he presents the following claims: (1) the evidence was insufficient to support his convictions for theft over $10,000 and felony evading arrest; (2) the trial court erred in excluding his exculpatory statement, denying his request for a mistrial, and failing to instruct the jury on the lesser-included offenses of unauthorized use of a vehicle and reckless driving. Following our review, we conclude that the trial court, in its instructions as to theft over $10,000, should have instructed the jury as to the Class A misdemeanor, unauthorized use of a motor vehicle. Accordingly, we reverse the conviction for theft over $10,000 and remand for a new trial. The conviction for felony evading arrest with risk of death or injury is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part**
**and Reversed and Remanded in Part**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

Ross E. Alderman, District Public Defender; C. Dawn Deaner, Assistant Public Defender (on appeal); and Hollis I. Moore, Jr., and Christopher T. Cohron, Assistant Public Defenders (at trial), for the appellant, James McClennon.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret T. Gunn and Michelle H. Thompson, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

## FACTS

Officer Jeremy Harrell of the Metro Nashville Police Department testified that he and Officer William Morgan were in their parked police car at the intersection of 11th Avenue North and Jefferson Street on the night of December 14, 2000. Around 10:30 p.m., they "observed a Ford Explorer without its headlights pull up to the stop sign with its left turn signal on" which "started to pull out and turn left, but abruptly turned right." The marked police car was approximately thirty feet away and in a position where it was visible to the Explorer.

This conduct "aroused [the] suspicions" of the officers, who then pulled out behind a Cadillac that was behind the Explorer. At this point, the driver of the Explorer accelerated across a bridge at "a high rate of speed" and turned left with the officers, having passed the Cadillac, following his vehicle. The driver then turned right and accelerated "up to about 60 miles an hour" before running a stop sign and making a left turn, at which point Officer Harrell "got on the radio and said we had a vehicle refusing to stop just as Officer Morgan hit the blue lights." The driver then made a right turn and traveled for "another block-and-a-half or so before [making] a sharp left-hand turn into the alley behind 1629 Jackson Street, losing control of the vehicle and crashing into the back corner of the building, which is an apartment building." Describing the defendant's driving, Officer Harrell testified:

> He was flying, I mean, he was traveling upwards of 60 miles an hour.[1] That is as fast as I got and never really caught up to him, but we got behind him enough to observe how he was driving through the intersections. He didn't even – he slowed down enough just to make the turn on both, where he blew through both of the stop signs.

The defendant had crashed through a brick wall, coming to a stop in the bedroom of the apartment's resident, an elderly woman on a walker, who, although uninjured, was "very disoriented." The vehicle had pushed her bed "all the way across the bedroom."

The officers approached the vehicle, got the defendant out, and handcuffed him. Officer Harrell testified, "As soon as we got [the defendant] on the ground and were handcuffing him, he said that he stole the truck. He said I stole the truck twice, two or three times." This statement was volunteered by the defendant before officers had the opportunity to begin questioning him. After being advised of his rights, the defendant "stated that he got the keys and took it from somewhere on Blank Street about 20 to 30 minutes ago."

Officer William Morgan of the Metro Nashville Police Department testified that he was on duty with Officer Harrell the night of the incident. He said that the Ford Explorer caught their attention because its headlights were off and, even though its left turn signal was on, it made an

---

[1]The speed limit for the roads on which the defendant was driving was thirty miles per hour.

"abrupt right turn" as it approached the intersection where their police car was parked. The officers tried to maneuver behind the Explorer "to find out . . . what the story was with the vehicle." The defendant then began "accelerating at a high rate of speed" and driving "[e]xtremely reckless" along the same route testified to by Officer Harrell. According to Officer Morgan, "I remember Officer Harrell picking up the radio and radioing that we have a vehicle that is not going to stop after I turned the blue light on and the siren."

As to why he did not activate the blue lights earlier, Officer Morgan explained:

> We were trying to catch up to the vehicle before we [activated the blue lights] because based on our experience over there in that area, if you tend to turn your blue lights on and you are 50 yards behind a vehicle, what will happen is they will pull around a corner and jump out and bail out of the car. That is the reason.

After the blue lights and siren were activated, the defendant continued driving for a "block or so" before turning into the alley and driving through the wall of the apartment. Officer Morgan testified that, as they were getting the defendant out of the vehicle and handcuffing him, he stated more than once that he "stole the vehicle."

Raymond Wells, the owner of the 1999 Ford Explorer that the defendant was driving, testified that on December 14, 2000, around 5:30 p.m., he had parked and locked his vehicle on the street outside a friend's apartment somewhere "around [Fisk] University." Inside his friend's apartment, Wells had left his keys in the pocket of his coat, which he had placed over the back of a chair in the living room. After playing cards, he retired to another room, leaving his coat and keys in the living room. Sometime later that night, Wells was informed that his keys and vehicle had been taken, but said that he had not given anyone, including the defendant, permission to take his keys or use his vehicle. He said that he paid "about $25,000" for the vehicle in May 2000 and that the repairs required after the crash totaled $13,000.

On cross-examination, Wells testified that there were seven or eight others at his friend's apartment that night, only two of whom he knew, the defendant not being one of them. One of those he knew was his brother-in-law, Larry Wade. Wells drank "[q]uite a bit" of beer and wine and went to a back room to lie down around 8:30 or 9:00 p.m. Wade subsequently informed him that he had taken his keys that night. He did not remember giving Wade, who had been allowed to borrow his vehicle in the past, permission to take his keys on this occasion, but stated that, because of his level of intoxication, it was possible that he was asked for permission and did not remember. He added that, had Wade taken his vehicle, he would not have reported it stolen. Wade, who was on an offshore drilling rig in the Gulf of Mexico at the time of trial, never explained to Wells how he lost possession of the keys or how the defendant came to have them.

The defendant presented no evidence at trial.

## ANALYSIS

## I.  Sufficiency of the Evidence

The defendant argues first that the evidence presented at trial was insufficient to convict him of theft of property over $10,000 and of felony evading arrest with risk of death or injury.  As to the theft charge, the defendant asserts that the State did not prove that he intended to deprive the victim of his vehicle.  Regarding the charge of evading arrest, he asserts that the State failed to prove that he actually received a signal to stop from the police and, therefore, did not prove that he intended to flee from the police.

In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is  "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt.").  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact.  See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).  "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."  State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).  Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation.  The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand.  Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses.  In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).  A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient.  See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). When the credibility of the witnesses was resolved by the jury in favor of the State, the appellate court "may not reconsider the jury's credibility assessments."  State v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000), cert. denied, 533 U.S. 953, 121 S. Ct. 2600, 150 L. Ed. 2d 757 (2001).  With these principles, we will consider the defendant's claims that the evidence was insufficient as to both of his convictions.

## A. Theft of Property Over $10,000

As defined by Tennessee Code Annotated section 39-14-103, "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." The offense is a Class C felony if the value of the property obtained is $10,000 or more but less than $60,000. Tenn. Code Ann. § 39-14-105(4). In order to obtain a conviction for this offense, therefore, the State must prove that the defendant: (1) knowingly obtained or exercised control over property; (2) did not have the owner's effective consent; (3) intended to deprive the owner of the property; and (4) the property was valued at more than $10,000. See State v. Amanns, 2 S.W.3d 241, 245 (Tenn. Crim. App. 1999).

The defendant argues that the State failed to prove that he had the requisite intent to deprive the victim of his property, pointing to the fact that he had only been in possession of the vehicle for twenty or thirty minutes at the time of his arrest. The theft statute, however, does not contain any temporal requirements. See Tenn. Code Ann. § 39-14-103. Once a thief obtains or exercises control over the property with the intent to deprive the owner of the property, the theft has occurred. State v. Ralph, 6 S.W.3d 251, 255 (Tenn. 1999) (concluding that a theft can be committed by one who has effective consent to be inside the vehicle "by simply driving away in the automobile if the owner leaves the vehicle to buy gasoline or food").

The defendant additionally argues that the State did not prove how he came into possession of the victim's keys and that he may have received them from the victim's brother-in-law. However, the manner in which the defendant came into possession of the keys is not dispositive of whether he intended to deprive the victim of the vehicle. Addressing a similar situation in State v. Brooks, 909 S.W.2d 854, 861 (Tenn. Crim. App. 1995), where the victim left the defendant, whom she knew, in her truck with the keys, this court held that "the defendant's taking of the truck, using it for a period of time, and evading the police in the truck, including wrecking it into police cars, could, in sum, support a guilty verdict for theft[.]"

Finally, the defendant argues the fact he was driving in the direction of the location where the victim had parked his vehicle when the accident occurred demonstrates that he never intended to deprive the victim of his property. However, since the defendant was involved in a high-speed attempt to evade police as the accident occurred, making turns as necessary, the fact that his last turn before the crash happened to put him in the direction of the area from where the vehicle was taken would appear to be merely fortuitous.

The evidence at trial was that the defendant was seen by police officers driving the victim's Ford Explorer. When the police pulled behind him, he accelerated to thirty miles above the speed limit, running stop signs and making several sharp turns. As the police activated their blue lights, the defendant continued to flee, ultimately crashing through the brick wall of an apartment building. While being handcuffed, he more than once told the officers that he had stolen the vehicle. The victim testified that he neither knew the defendant nor gave him permission to use his vehicle.

Additionally, the proof was that the vehicle's value exceeded $10,000. Based upon all of this evidence, a rational trier of fact could have found that was the defendant's "conscious objective or desire" to "withhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner." See Tenn. Code Ann. § 39-11-106(8)(A), (18). While intent can rarely be shown by direct proof, Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973), the defendant's admission that he "stole the vehicle" provides some direct insight as to whether he intended to deprive the victim of his property. The defendant correctly asserts that a conviction cannot be founded solely upon his confession, State v. Smith, 24 S.W.3d 274, 281 (Tenn. 2000), but only slight objective evidence of the crime is necessary to corroborate a confession and thus sustain a conviction. State v. Ervin, 731 S.W.2d 70, 72 (Tenn. Crim. App. 1986). Also, it is proper to infer intent from surrounding facts and circumstances. State v. Lowery, 667 S.W.2d 52, 57 (Tenn. 1984). A jury reasonably could infer that the defendant, who was driving a vehicle without the owner's consent, had no intention of returning it to its owner when he fled from the police during a high-speed chase, stopping only because he crashed into a building and telling the arresting officers that he had stolen the vehicle. Accordingly, we conclude that the evidence is sufficient to sustain the conviction for theft of property over $10,000.

### B. Felony Evading Arrest With Risk of Death or Injury

Tennessee Code Annotated section 39-16-603(b)(1) provides, "It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop." When the flight or attempt to elude law enforcement creates a risk of death or injury to innocent bystanders or other third parties, evading arrest becomes a Class D felony. Id. § 39-16-603(b)(3). Although the defendant concedes that the police signaled for him to stop, he argues that the State failed to prove both that he actually received the signal to stop and that he intentionally fled from the police after receiving a signal to stop.

We agree with the defendant that proof of his knowledge of a signal to stop is a required element of the offense. In State v. Jason Eric Bradburn, No. 01C01-9712-CC-00568, 1999 WL 632301, at *5 (Tenn. Crim. App. Aug. 19, 1999), we stated that "whether Appellant had committed Class E felony evading arrest depends on whether he knew that he had received a signal from the police to stop his vehicle . . . ." However, this is a question of fact for the jury's determination. State v. Frank Johnson, No. W2000-00386-CCA-R3-CD, 2001 WL 721082, at *7 (Tenn. Crim. App. June 26, 2001), perm. to appeal denied (Tenn. Oct. 22, 2001).

The defendant argues that the officers "activated their emergency equipment almost simultaneously with the defendant's crash into the apartment building." However, the evidence presented at trial was that the defendant had taken the police on a short high-speed chase, making several turns and running two stop signs, when the officers activated their blue lights. Although Officer Harrell stated that the time between when the blue lights were activated and when the defendant wrecked was "just a few seconds," he also said that in those "few seconds" the defendant

managed to make a right turn, drive another one and one-half blocks, make a sharp left-hand turn into the alley, and lose control of the vehicle, crashing into the back of an apartment building.

Officer Morgan was unable to say how much time passed between the moment the defendant was signaled to stop and the wreck, testifying as follows:

> Q. So the first notice he has to pull over is mere seconds before that accident occurs; correct?
>
> A. Not mere seconds.
>
> Q. Well, I mean, this is a block or block-and-a-half. How long did it take to drive that?
>
> A. I couldn't tell you. It is not hard to notice the strobes on a police car though.

Morgan further testified that, after the blue lights and siren were activated, the defendant continued driving for a "block or so" before turning into the alley and crashing. He estimated the distance as "probably 100 yards" and described the police emergency equipment as consisting of emergency blue lights, strobe headlights, and a siren. There were no other cars between the officers and the defendant.

A conviction based on circumstantial evidence is permitted in Tennessee. State v. Tharpe, 726 S.W.2d 896, 899 (Tenn. 1987). Whether the conviction is based upon direct or circumstantial evidence, the standard for appellate review is the same. State v. Johnson, 634 S.W.2d 670, 672 (Tenn. Crim. App. 1982). On appeal, the State is entitled to the strongest legitimate view of the trial evidence and all reasonable and legitimate inferences which may be drawn from the evidence. State v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000). The weight given to circumstantial evidence is for the jury to determine. Williams v. State, 520 S.W.2d 371, 374 (Tenn. Crim. App. 1974). Circumstantial evidence alone may be sufficient to convict one of a crime, if such evidence sufficiently proves all the necessary elements. Tharpe, 726 S.W.2d at 899-900. In cases that hinge upon circumstantial evidence, it is well settled that the proof must be consistent with the guilt of the defendant and inconsistent with his innocence, and sufficiently strong to overcome every other reasonable hypothesis except that of guilt. Marie v. State, 319 S.W.2d 86, 89 (Tenn. 1958).

We conclude that a jury reasonably could find that the defendant knew that he was signaled to stop by the police yet continued to flee. Accordingly, the evidence was sufficient to support the defendant's conviction for Class D felony evading arrest.

## II. Admissibility of Defendant's Exculpatory Statement

At the time of his arrest and at the scene of the accident, the defendant made admissions to Officers Harrell and Morgan that he had stolen the vehicle. Approximately one hour later, after having been read his <u>Miranda</u> rights, the defendant made an exculpatory statement to one of the officers as he was being booked at the police station,[2] saying "to the effect of he was trying to cover for the owner of the vehicle in some way."

The State's arguments as to these statements were set forth in a pretrial motion:

> The State intends to introduce an inculpatory statement made by the defendant at the time of his arrest. Later, at booking, the defendant made a separate, self-serving statement. These statements are separated by time, location, and circumstance. Therefore, the State requests that defense counsel be instructed not to elicit this second statement from witnesses.

The defendant argued that both statements, although made at different times and places, were part of "one continuous statement," and, thus, the jury was entitled to hear the statement in its entirety. The trial court granted the State's motion, concluding: "These are not part of the same statement. . . . [T]his is not a situation where the State is picking and choosing what part of the statement to come in."

On appeal, the defendant presents again that his remarks were part of one, ongoing statement, and, thus, the trial court improperly prohibited him from introducing the exculpatory statement into evidence. He relies on the holding in <u>Espitia v. State</u>, 199 Tenn. 696, 700, 288 S.W.2d 731, 733 (1956):

> In confessions or statements of the kind voluntarily made by the accused the jury must take the whole of this statement or confession and weigh it as they weigh the other evidence, rejecting some part if they desire to do so and giving credit to other parts of the statement if they have a sufficient reason to do so under all the evidence as it is introduced.

Tennessee Rule of Evidence 106, enacted after <u>Espitia</u>, provides, "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Additionally, the defendant relies on language from <u>State v. Keough</u>, 18 S.W.3d 175, 182 (Tenn. 2000), in which our supreme court addressed the proper application of Rule 106:

---

[2]The record is not clear as to whether the exculpatory statement was made to Officer Harrell or Morgan.

> [I]t appears that where the prosecution introduces a statement made by the defendant, the trial court may in the interest of fairness order that the remainder of the statement be admitted as well under Rule 106. Indeed, it would not be consistent with fundamental fairness to allow the prosecution to introduce only the most incriminating portions of a defendant's statement without regard to the overall context or relevant exculpatory portions found in the same statement.

In <u>Keough</u>, the defendant first made an oral statement to one detective and then gave a partially exculpatory written statement to another detective. <u>Id.</u> at 181. The trial court prohibited introduction of the written statement, allowing testimony only as to the oral statement. <u>Id.</u> at 182. The supreme court concluded that Rule 106 was not applicable because the defendant had given two separate statements, one oral and the other written, to two different detectives. <u>Id.</u> at 182-83.

Here, Rule 106 is inapplicable as well because it does not apply to entirely oral statements. <u>See</u> Tenn. R. Evid. 106; Neil P. Cohen et al., <u>Tennessee Law of Evidence</u>, § 1.06[3][d] (4th ed. 2000). Reliance on <u>Espitia</u> is similarly misplaced as the two remarks made by the defendant in this case did not form a single, continuous statement and, therefore, should not be analyzed as such. The defendant's crime scene declaration that he stole the vehicle was a single statement admissible as an admission. <u>See</u> Tenn. R. Evid. 803. The defendant's comment about covering for the owner of the vehicle made at the police station an hour later was a second, single statement properly held to be inadmissible under the well settled rule that self-serving statements are generally inadmissible. <u>Hall v. State</u>, 552 S.W.2d 417, 418 (Tenn. Crim. App. 1977).

We agree with the trial court that the situation was not one in which the State was "picking and choosing what part of the statement to come in." Accordingly, we conclude that the court did not abuse its discretion in prohibiting the defendant from introducing his exculpatory statement.

### III. Denial of Defendant's Request for a Mistrial

On September 17, 2001, the morning the trial was to begin, the State filed a Supplemental Discovery Response which stated:

> On September 15th, 2001, Mr. Raymond Wells stated to this Assistant District Attorney General that he was at the Nashville apartment visiting a female. He further stated that his brother-in-law had told him that he took the keys from the [victim's] coat, used the car, and then allowed a third person to use it for a short period on the promise of a quick return. Finally, Mr. Wells stated that his brother-in-law was currently "off-shore" and not able to appear at trial.

During the pretrial motions which were heard the morning the trial began, defense counsel stated that he "may want to impeach Mr. Wells as the car owner based on his prior inconsistent

-9-

statements, some of which have been solely made to the District Attorney." The trial court responded by instructing counsel to "cross-examine him as to prior inconsistent statements and either he admits that he made them or he denies he made them, and then you are going to have to figure out whether or not I will let you admit them[.]" A continuance to investigate the statements and locate the victim's brother-in-law was not requested, although, on appeal, the defendant concludes that his "best course of action would have been to request a continuance immediately after the State filed its Supplemental Discovery Response."

During trial, the defendant tried to ask Wells what he had subsequently learned about who had taken his keys, prompting the State to make a hearsay objection. The trial court conducted a jury-out hearing in which Wells testified that he had first heard from his nephew, sister, and "[a] couple of girls" that his brother-in-law had taken his keys. Later, his brother-in-law, who was offshore and unavailable to testify, informed him that he had taken the keys so that he could take "a lady somewhere." No one, however, informed Wells as to how the defendant had gotten his keys.

Defense counsel stated they were "going to need some time to explore" any potentially exculpatory information, and the trial court responded, "[A]re you asking for a mistrial? Are you asking for a continuance? What are you asking for?" Counsel responded:

> [DEFENSE COUNSEL]: I guess, Your Honor, what we would ask for is a mistrial.
>
> THE COURT: Well, then my question is this. You knew this before we swor[e] the jury.
>
> [DEFENSE COUNSEL]: Yes.
>
> THE COURT: That is, General Gunn provided you this information. What I said was I will certainly let you explore any prior inconsistent statements but we never talked about you needed [sic] to explore it, so you didn't ask for a continuance. You didn't ask for us to have a little jury-out hearing before I swore this jury.
>
> [DEFENSE COUNSEL]: That's true.
>
> THE COURT: So why should I give you a mistrial now?
>
> [DEFENSE COUNSEL]: We did not contemplate this situation.

The trial court denied the defendant's request, stating, "I'm going to deny your motion for a mistrial because I think we can fashion a remedy that satisfies that . . . and that is I will let you ask Mr. Wells about what his brother-in-law told him, about his use of the car in the past, and the fact that . . . he didn't give him permission." The defendant was not permitted to inquire into statements

made by anyone else concerning who took the keys. He argues on appeal that the trial court improperly denied his request for a mistrial because it impaired his ability to defend himself, resulting in a "miscarriage of justice."

A decision as to whether to grant a mistrial rests within the sound discretion of the trial court and, in making this determination, trial courts should not mechanically apply an abstract standard, but instead should apply all relevant factual circumstances of the particular case. State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994). The entry of a mistrial is appropriate when the trial cannot continue, or, if the trial does continue, a miscarriage of justice will occur. State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). A jury may be discharged and a mistrial declared if there is a manifest necessity requiring such action by the trial judge to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict. Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). The burden of establishing a "manifest necessity" lies with the appellant. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

The defendant argues that the granting of a mistrial would have allowed him time to locate witnesses to testify to the brother-in-law's statements and that such testimony "would likely have resulted in the jury reaching a different verdict with regard to the theft charge." However, at trial, the trial court permitted the jury to learn of this information, allowing the defendant to question the victim about what his brother-in-law told him, about his borrowing of the vehicle in the past, and whether he had given him permission to use the vehicle that night. Thus, through this witness, the defendant was able to present the same evidence that he might have presented through others, had he located them. Accordingly, we conclude that a mistrial was not necessary to ensure an impartial verdict and the trial court, therefore, did not abuse its discretion in denying the defendant's request.

In arguing that the trial court erred in not granting the mistrial request, the defendant also relies on the following language from State v. Morgan, 825 S.W.2d 113 (Tenn. Crim. App. 1991): "'insistence upon expeditiousness in the face of a justifiable request for delay' can render a trial an empty formality so as to violate due process." Id. at 117 (quoting Ungar v. Sarafite, 376 U.S. 575, 84 S. Ct. 841, 849, 11 L. Ed. 2d 921 (1964)). However, Morgan and Ungar dealt with a request for a continuance, not a mistrial, and their persuasiveness, therefore, is limited. We cannot conclude that the record supports the claim that the trial court's decision to deny the request for a mistrial was due to an uncompromising desire to expedite the proceedings. We conclude that the trial court did not abuse its discretion in denying the motion for a mistrial.

## IV. Jury Instructions

The defendant argues that the trial court was required to instruct the jury on the Class A misdemeanor of unauthorized use of a vehicle as a lesser-included offense of theft of property over $10,000 and reckless driving as a lesser-included offense of both Class D felony evading arrest and felony reckless endangerment. The State agrees that unauthorized use of a vehicle is a lesser-included offense of theft of property over $10,000, specifically the theft of a vehicle, but argues that the evidence was insufficient to support a conviction for the lesser-included offense, making

unnecessary the need to charge it to the jury.  Additionally, the State contends that reckless driving is not a lesser-included offense of Class D felony evading arrest or felony reckless endangerment and therefore need not have been charged.

In applying the lesser-included offense doctrine, three questions arise: (1) whether an offense is a lesser-included offense; (2) whether the evidence supports a lesser-included offense instruction; and (3) whether an instructional error is harmless. State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002). To determine whether an offense is a lesser-included offense, the following definition of "lesser-included" offenses was adopted in State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999):

> An offense is a lesser-included offense if:
>
> (a)  all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b)  it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>
>> (1)  a different mental state indicating a lesser kind of culpability; and/or
>>
>> (2)  a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c)  it consists of
>
>> (1)  facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>>
>> (2)  an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>>
>> (3)  solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

If an offense is a lesser-included offense of the crime charged, it then must be determined whether the trial court is obligated to charge it to the jury.  The trial court must instruct the jury on all lesser-included offenses if the evidence introduced at trial is legally sufficient to support a conviction for the lesser offense, regardless of whether or not a defendant requests such an instruction. Id. at 464.  To accomplish this, the trial court must first determine whether any evidence,

viewed liberally in the light most favorable to the existence of the lesser-included offense, exists that reasonable minds could accept as to the lesser-included offense. Id. at 469. Whether sufficient evidence supports a conviction of the charged offense does not affect the trial court's duty to instruct on the lesser offense if evidence also supports a finding of guilt on the lesser offense. Id. at 472.

When determining whether a failure to instruct on a lesser-included offense requires reversal, the proper inquiry for an appellate court is whether the error is harmless beyond a reasonable doubt. State v. Ely, 48 S.W.3d 710, 727 (Tenn. 2001). The erroneous failure to instruct on lesser-included offenses may be harmless under certain circumstances. Id. at 725. A reviewing court may find the error harmless because the jury, by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, necessarily rejected all other lesser-included offenses. Allen, 69 S.W.3d at 191. Additionally, the reviewing court, in making its determination, should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury. Id.

## A. Unauthorized Use of a Vehicle as a Lesser-Included Offense of Theft of Property

The defendant was charged with theft of property over $10,000 which occurs when a person, with the intent to deprive the owner of property valued at over $10,000, knowingly obtains or exercises control over the property without the owner's effective consent, a Class C felony. Tenn. Code Ann. §§ 39-14-103, -105(4). In addition to instructing as to this offense, with which the defendant had been charged, the court instructed as to Class D theft, between $1000 and $10,000; Class E theft, between $500 and $1000; and Class A misdemeanor theft, $500 or less.

The defendant argues on appeal that the trial court erred in not also instructing as to the unauthorized use of a motor vehicle, proscribed by Tennessee Code Annotated section 39-14-106, which provides "[a] person commits a Class A misdemeanor who takes another's automobile, airplane, motorcycle, bicycle, boat or other vehicle without the consent of the owner and the person does not have the intent to deprive the owner thereof." The trial court denied the defendant's request to instruct the jury on this offense, stating:

> [T]he question is two-fold. Is [unauthorized use of a vehicle] a lesser included offense? I think clearly it is, and second of all, does the proof rise to the level for which the jury could find that?
>
> The proof is that the car was taken without consent. Actually, the defense is that there is no proof that there was consent.
>
> I'm not going to charge it; however, it is a really close call . . . but I'm not going to charge that under the facts of this case.

Pre-Burns decisions concluded that the unauthorized use of a vehicle was a lesser-included offense of theft of property, when the property stolen was a vehicle. See Spencer v. State, 501

S.W.2d 799, 800 (Tenn. 1973) (joyriding is a lesser-included offense of larceny and must be charged as the only difference between the two offenses is the element of intent to steal in the latter); State v. Brooks, 909 S.W.2d 854, 860 (Tenn. Crim. App. 1995) (joyriding is a lesser-included offense of theft as the sole variation between the offenses is the offender's intent).  Subsequent to the holding in Burns, this court held, in State v. David Michael Gamble, No. 03C01-9812-CR-00442, 2000 WL 45718, at *6 (Tenn. Crim. App. Jan 21, 2000), that the unauthorized use of a vehicle continues to be a lesser-included offense of theft of a vehicle because it meets the requirements of part (b) of the Burns test.

Although the defendant did not testify at trial, the theft charge was defended as if the defendant had taken the vehicle to joyride, which would constitute the Class A misdemeanor of the unauthorized taking of a vehicle without the consent of the owner or the intent to deprive the owner of the vehicle.  Both parties, as well as the trial court, recognized that the unauthorized taking of a motor vehicle is a lesser-included offense of theft over $10,000.  Accordingly, we conclude that the jury should have been instructed as to this offense and now must determine the effect of this not having been done.  The jury was instructed as to theft over $10,000, as well as the lesser theft offenses, whose elements differ only as to the value of the item taken.  As to their elements, each of these lesser offenses varies only as to value but has the same intent requirement, that the thief intend to deprive the owner of the property. However, the joyriding statute differs from each of the theft offenses with which the jury was charged as to intent.  Accordingly, we cannot conclude beyond a reasonable doubt that it was harmless not to instruct the jury as to unauthorized use of a vehicle, this offense being the thrust of the defense.  Accordingly, we reverse the conviction for theft over $10,000 and remand for a new trial.

**B.  Reckless Driving as a Lesser-Included Offense of Class D Felony Evading Arrest**

The defendant was charged with Class D felony evading arrest and argues on appeal that, as to this offense, the trial court should have instructed as to reckless driving.  We note that the trial court declined only to charge reckless driving as a lesser-included offense of reckless endangerment, not evading arrest:

> [DEFENSE COUNSEL]:  Is Your Honor going to charge reckless driving?
>
> THE COURT:  No.  Are you asking for that?
>
> [DEFENSE COUNSEL]:  Yes, Your Honor.
>
> THE COURT:  And exactly how would that be a lesser included offense?
>
> [DEFENSE COUNSEL]:  I think that recklessness is included in a charge of reckless endangerment in that–

THE COURT: Which one are you asking it to be a lesser included of: the reckless endangerment or the evading arrest?

[DEFENSE COUNSEL]: Well, it is evading arrest with – it would be the reckless endangerment count.

. . . .

THE COURT: Okay. Well, I'm going to find, based on <u>Burns</u> that that is not a lesser included offense. Clearly, there is an additional element that is . . . required by reckless driving that is not required in reckless endangerment, and that element doesn't go toward the mental intent.

The elements of Class D felony evading arrest are (1) operating a motor vehicle (2) on a street in this state and (3) receiving a signal from any law enforcement officer to bring the vehicle to a stop and (4) intentionally fleeing or attempting to elude the officer and (5) creating a risk of death or injury to innocent bystanders or other third parties caused by the flight or attempt to elude. The elements of reckless driving are (1) driving a vehicle (2) in a willful or wanton disregard for (3) the safety of persons or property.

Because "anyone who is driving a vehicle in an attempt to flee or elude law enforcement authorities while creating a risk of death or injury to third parties is necessarily driving in 'willful or wanton disregard' for the safety of others," <u>State v. Kerry D. Garfinkle</u>, No. 01C01-9611-CC-00484, 1997 WL 709477, at *4 (Tenn. Crim. App. Nov. 7, 1997), all of the elements of reckless driving are included in the greater offense of Class D felony evading arrest. Therefore, under part (a) of <u>Burns</u>, reckless driving is a lesser-included offense of Class D felony evading arrest. Additionally, because a willful or wanton disregard for the safety of persons or property is a less serious risk of harm than the risk of death or injury to innocent bystanders or other third parties, reckless driving is a lesser-included offense of Class D felony evading arrest under part (b)(2) of the <u>Burns</u> test as well.

We now must determine the effect of the jury's not having been instructed as to reckless driving. As to the charge of Class D felony evading arrest, the trial court instructed the jury on the lesser-included offense of evading arrest while operating a motor vehicle, a Class E felony, which differs from the charged offense by not requiring the State to prove that, in attempting to elude officers, the defendant created a risk of death or injury to others. The jury's verdict demonstrates that, although it had the option of finding the defendant guilty of a lesser offense, it chose not to do so. Error may be harmless when the jury, by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, necessarily rejected all other lesser-included offenses. <u>Allen</u>, 69 S.W.3d at 189. Accordingly, we conclude that the trial court's failure to instruct the jury on reckless driving was harmless.

### C. Reckless Driving as a Lesser-Included Offense of Felony Reckless Endangerment

Although the defendant was convicted of reckless endangerment with a deadly weapon, this conviction was merged into that for felony evading arrest, which we have affirmed. Accordingly, the claim as to error in instructing as to reckless endangerment with a deadly weapon is moot.

### CONCLUSION

Based on the foregoing authorities and reasoning, we reverse the defendant's conviction for theft of property over $10,000 and remand for a new trial. The conviction for felony evading arrest with risk of death or injury is affirmed.

_____
ALAN E. GLENN, JUDGE