**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT KNOXVILLE**
**DECEMBER SESSION, 1998**

**FILED**

**March 15, 1999**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | |
|---|---|
| **STATE OF TENNESSEE,** | ) |
| | ) |
| **Appellee** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **GENE IVAN AMANNS,** | ) |
| | ) |
| **Appellant** | ) |

No. 03C01-9712-CR-00527

**KNOX COUNTY**

**Hon. Richard Baumgartner, Judge**

**(Theft of Property)**

For the Appellant:

**Mark E. Stephens**
District Public Defender

**Paula R. Voss**
**Jamie Niland**
Asst. Public Defenders
1209 Euclid Avenue
Knoxville, TN 37921

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Clinton J. Morgan**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**Randall E. Nichols**
District Attorney General

**Scott Green**
Asst. District Attorney General
City-County Building
Knoxville, TN 37902

OPINION FILED: _____

REVERSED AND DISMISSED

**David G. Hayes**
Judge

**OPINION**

The appellant, Gene Ivan Amanns, was convicted by a jury in the Knox County Criminal Court of theft of property, a class D felony. The trial court imposed a four year sentence of split confinement and ordered the appellant to serve six months in jail followed by supervised probation. In addition, he was ordered to pay restitution in the sum of $1,494.50. In this appeal, we address the dispositive issue of whether the appellant's conduct constitutes the crime of theft.[1]

After review, the appellant's judgment of conviction is reversed and dismissed.

**BACKGROUND**

The material facts of this case are not in dispute. In early July, 1994, the appellant, a contractor, entered into a written contract with Ms. Otey Sue Reynolds to remodel the basement of her home. The agreed contract price was $16,000. The terms provided that the appellant would be paid an initial amount of $6,000, a second payment after the project was fifty percent complete, and the balance due upon completion. On July 21, 1994, Ms. Reynolds paid the appellant $6,000 by check. The following day, the appellant cashed the $6,000 check. On this same day, he deposited the sum of $1,760.57 with 84 Lumber Company in Knoxville for the purchase of estimated materials to be used in the remodeling project. The appellant advised 84 Lumber that these materials were being purchased for improvements to Ms. Reynolds' house. The proof established that the appellant was under no contractual obligation to establish any such account. Moreover, Ms. Reynolds had no possessory interest in the funds in the account.

---

[1]The appellant also raises as issues on appeal (1) that his sentence was excessive and (2) the introduction of irrelevant and prejudicial evidence.

The appellant began work on August 1, 1994.  The first day involved only the unloading of some materials.  The following day, he returned to Ms. Reynolds' home around 10:00 a.m. and worked until 3:50 p.m. for a period of approximately six hours.  Upon the appellant's arrival at the Reynolds home the third day, Ms. Reynolds was obviously displeased with the quality of workmanship and advised the appellant, "I can't have work like this in my house."  The appellant testified that he was told by Ms. Reynolds, "I don't like your work at all.  I don't want you to work here no more."  Following the exchange, the appellant loaded his tools and materials and left.  No further work was performed.  Ms. Reynolds testified that she attempted to contact the appellant by phone that day by leaving a message on his recorder.  Within the next two days, Ms. Reynolds called her attorney about the matter.  Approximately two days later, the appellant received a letter from Ms. Reynolds' attorney advising him that he was to have no further contact with Ms. Reynolds.  At the appellant's request on August 5, 1994, 84 Lumber issued a check in the sum of $1,494.50, representing the balance of his deposit for the Reynolds job.

At trial, the State prosecuted the case upon the theory that the $6,000 received by the appellant from Ms. Reynolds constituted theft.  At the motion for judgment of acquittal, following the State's proof, the appellant vigorously argued that his conduct did not constitute a crime.[2]  In denying the motion, the court ruled that the proof was insufficient to support a charge of theft for $6,000 but was sufficient to establish theft in the amount of $1,494.50.  The case was then submitted to the jury for theft of $1,494.50.

**ANALYSIS**

The appellant was charged with theft of property pursuant to Tenn. Code Ann.

---

[2]The record reflects that Ms. Reynolds had obtained a civil judgment in the sum of $6,000 against the appellant in Knox County General Sessions Court.

3

§ 39-14-103 (1991).[3] With the enactment of this provision, the legislature eliminated the traditional distinctions between various unlawful takings in favor of one general theft statute. State v. Byrd, 968 S.W.2d 290 (Tenn. 1998). Although the current theft statute eliminated the antiquated terminology of the old, it continues to prohibit the criminal conduct contemplated by the former theft statutes. See State v. Byrd, No. 03C01-9505-CR-00145 (Tenn. Crim. App. at Knoxville, Nov. 6, 1996), affirmed by, 968 S.W.2d at 290 (citing State v. Young, 904 S.W.2d 603, 604 (Tenn. Crim. App. 1995)). In enacting a consolidated theft statute, "the objective is to define the crime broadly enough to include all vaguely separated theft offenses so that evidence of appropriation by any of the forbidden methods will support the charge." State v. Saylor, 618 P.2d 1166, 1170 (Kan. 1980)[4]; see also MODEL PENAL CODE § 223.1 (1980). Like charity, Tennessee's definition of theft covers a multitude of sins. The distinction between the various theft offenses is unimportant; the crime is complete when a person takes property, without the owner's consent with the intent to deprive the owner of the property. Thus, the charge of theft may be supported by proof of embezzlement, false pretense, fraudulent conversion and other statutory forms of larceny existing prior to the enactment of our current offense of theft. See Tenn. Code Ann. § 39-14-101 (1991). For purposes of instructing the jury, the heretofore existing complexities and historical distinctions among theft and theft-related offenses are of no significance as the jury is charged upon the offense of theft.

The appellant argues he committed no crime and that his conduct at best constitutes breach of a contractual obligation. Moreover, he argues that clearly he is not guilty of theft because he obtained the sum of $6,000 from Ms. Reynolds (which included the sum of $1,494.50) with her consent. At the trial level, the State argued

---

[3]"A person commits theft of property if with the intent to deprive the owner of the property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103.

[4]The Kansas Supreme Court in Saylor recognized that one purpose of the consolidated theft statute "was to avoid the pitfalls of pleading where a defendant might escape a conviction for one type of theft by proof that he had committed another type of theft." Saylor, 618 P.2d at 1170.

that the appellant occupied a position of trust with Ms. Reynolds in performance of the contract:

> [T]he law is very clear in this state. As a contractor he was in a fiduciary capacity with Miss Reynolds. He was in a position of trust, and he breached that trust by taking money which had been entrusted to him and then converting it to his own use when he had no intention of performing.

The State argues, in effect, fraudulent breach of trust which was recognized within the family of theft offenses which existed prior to the adoption of the 1989 criminal code.[5] In order to obtain a conviction for fraudulent breach of trust, the State is required to establish that the defendant was bound to deliver or return the thing received or its proceeds. As the language of the statute indicates this statute encompasses crimes involving misappropriation of money or property delivered on deposit, misappropriation of property for hire, misappropriation of items delivered for repair, and etc. - not construction contracts involving the improvement of real property.[6] In this case, the appellant's sole contractual obligation was to remodel Ms. Reynolds' basement.

Simply because a contract exists between two parties does not mean that a fiduciary relationship has been created as was required for the prosecution under a theory of fraudulent breach of trust. In the absence of any statutory authority permitting the same, a court may not impose a fiduciary relationship between parties to a contract

---

[5]Fraudulent breach of trust is defined, in relevant part, as
> The fraudulent appropriation of personal property or money by anyone to whom it has been delivered on deposit, pledge, sequestration, or to be carried or repaired, or in whose hands or under whose control it may be by his position as clerk, agent, factor, or bailee, or on any other contract or trust by which he was bound to deliver or return the thing received or its proceeds, is a fraudulent breach of trust.

Tenn. Code Ann. § 39-4226 (1975); see also Tenn. Code Ann. § 39-3-904 (1982) (repealed 1989).

[6]This state has enacted a statute which provides criminal penalties for failure of a contractor who has received payment from the owner to pay laborers or materialmen. This statute is enacted upon the premise that funds which have been received by a contractor from the owner to pay laborers or materialmen are trust funds. Criminality arises only when there is a misapplication of these funds. The legislative purpose is to punish for fraudulent conversion. To impose criminal liability, there must be unpaid claims for labor and materials. See Tenn. Code Ann. § 66-11-138 (1997); Daughtery v. State, 393 S.W.2d 739 (Tenn. 1965), cert. denied, 384 U.S. 435, 86 S.Ct. 1601 (1966). Obviously, this statute is inapplicable as there are no unpaid claims for labor and/or materials.

when none exists. To do so would convert every civil breach of contract into a criminal proceeding for fraudulent breach of trust.[7] The proof in this case does not support the crime of fraudulent breach of trust.

In order to obtain a conviction for theft, the State must prove (1) the defendant knowingly obtained or exercised control over property; (2) the defendant did not have the owner's effective consent; and (3) the defendant intended to deprive the owner of the property. Tenn. Code Ann. § 39-14-103 (1991); T.P.I. § 11.01 (3d ed. 1992).

It is undisputed that the appellant lawfully obtained possession of the $6,000 at which time Ms. Reynolds relinquished all of her interest in the money. Moreover, the record is void of any proof that the appellant took possession of the $6,000 with the intent to convert the money to his own use. The proof in the record reflects that the appellant deposited the money in the 84 Lumber account on July 22 and proceeded to the job site on August 1 and began work. On August 3, the appellant discontinued work after an exchange with Ms. Reynolds over poor workmanship. On August 4 or August 5, the appellant was instructed by Ms. Reynolds' attorney not to have any further contact with her. On August 5, the appellant withdrew the $1,494.50. While these facts establish a breach of contract, they fall far short of establishing, beyond a reasonable doubt, any intent to defraud.

"The unifying conception in all [theft] offenses is that each involves the 'involuntary' transfer of property [ "or of a legally recognized interest therein," Tenn. Code Ann. § 39-11-106(a)(24)(A)(i) (1991).]," MODEL PENAL CODE § 223.1 (1980), and not the failure to comply with a contractual obligation. The application of the theft statute must be limited in scope to cases defined by the statutory language. The appellant's conduct fails to establish the commission of any offense recognized under

---

[7]Article One, Section 18 of the Tennessee Constitution prohibits imprisonment for debt.

6

our general theft statute. For this reason, the appellant's conviction for theft is reversed and dismissed.

_____
DAVID G. HAYES, Judge


CONCUR:


_____
JERRY L. SMITH, Judge


_____
JAMES CURWOOD WITT, JR., Judge