# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
June 2, 2004 Session

## STATE OF TENNESSEE v. TONY HARP

### Direct Appeal from the Circuit Court for Lauderdale County
### No. 7356    Joseph H. Walker, Judge

---

### No. W2003-01655-CCA-R3-CD  - Filed September 21, 2004

---

The Appellant, Tony Harp, was convicted in the Lauderdale County Circuit Court of one count of theft of property valued between $ 1,000 and $ 10,000, a class D felony.  Following a sentencing hearing, the trial court imposed a thirty-month community corrections sentence, with service of ninety days in the county jail.  On appeal, Harp asserts that: (1) the evidence is insufficient to sustain the conviction and (2) the trial court erred in denying him full probation.  After review of the record, we find no error and affirm the judgment of conviction and resulting sentence.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed

DAVID G. HAYES, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

J. Thomas Caldwell, Ripley, Tennessee, for the Appellant, Tony Harp.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Jennifer L. Bledsoe, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey A. Brewer, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

In July of 2000, the Appellant was hired as the manager of the convenience store operation at 51 Travel Center, a truck stop in Lauderdale County.  Shortly thereafter, the Appellant was promoted to general manager of the truck stop, which also included the sale of fuel and petroleum products.  The travel center was owned by Mike Allmand.  Allmand, who had other business interests, was not involved in the daily management of the business.  Allmand testified that he did not believe that the business was in financial trouble when the Appellant was hired.  As manager of the travel center, the Appellant authorized the issuance of all checks for the business.  However, the bookkeeper, Ms. Bowers, was the only person who could sign checks for payroll or for accounts

payable. Ms. Bowers testified that over a period of time, the Appellant requested that she sign a number of checks, with the Appellant noted as the payee, which he told her were for reimbursement of personal funds he had deposited into the travel center's account to make checks clear. These checks carried the notation "reimbursement." During this period, the travel center was experiencing financial difficulty, and the bank was routinely calling to inform of check overdrafts. Ms. Bowers stated that she signed the checks as requested, although she never saw any type of receipts indicating that the Appellant had deposited any of his personal funds into the travel center's account.

In January 2001, the Appellant requested that Ms. Bowers sign a blank check so that he could pay a bill for the travel center. The Appellant later made the check payable to Covington Pike Dodge in the amount of $ 6,500 and used the funds as down payment to purchase a new Dodge truck. The Appellant told the car salesman that he was using a business check because the truck would be used for both personal and business use. The truck was then titled in the Appellant's name. When Allmand asked the Appellant about his new truck, the Appellant told him that he had used a rebate from his mother, who worked at Chrysler, as partial payment for the truck.

In March 2001, Allmand began reviewing the bank account records due to various discrepancies. While attempting to reconcile the account, he discovered several unauthorized checks, one of which was the $ 6,500 check to Covington Pike Dodge. At this point, Allmand retained Billy Harmon, a CPA, to examine the business records. The Appellant met with Harmon and advised that he had been loaning his personal funds to the travel center to keep the business in operation. According to the Appellant, he believed that, in January 2001, he was owed $ 6,500 by the business. No documentation was ever provided to support this assertion, and Harmon's examination of the records also failed to produce any evidence supporting this claim. A TBI investigation produced various inconsistencies with regard to the Appellant's claim that he had at times financed the travel center operation. Moreover, a review of the Appellant's financial status indicated two prior bankruptcies and no available source of funds to loan to the travel center. The Appellant's employment was terminated in April 2001. That same month, the travel center filed for bankruptcy.

On October 7, 2002, the Appellant was indicted by a Lauderdale County grand jury for one count of theft of property over $ 1,000 but less than $ 10,000. The charge stemmed from the Appellant's act of writing the $ 6,500 check to Covington Pike Dodge. The Appellant pled not guilty and asserted the affirmative defense of claim of right. A bench trial was held on February 11, 2002, after which the trial court found the Appellant guilty as indicted.

During the sentencing hearing, the Appellant requested that he be granted judicial diversion or some form of alternative sentencing. After hearing the evidence presented, the trial court imposed a thirty-month community corrections sentence, with service of ninety days in the county jail.[1]

---

[1] We note that, in its sentencing pronouncement, the trial court stated that, if the Appellant successfully completed one year in the community corrections program, he would be eligible for transfer to supervised probation.

(continued...)

Additionally, the Appellant was ordered to pay $ 6,500 in restitution. The Appellant filed a motion for new trial, which was denied. This appeal followed.

## Analysis

On appeal, the Appellant raises two issues for our review. First, he asserts that the evidence was insufficient to support the trial court's finding of guilt beyond a reasonable doubt. Second, he argues that the trial court erred in denying him a sentence of full probation.

## I. Sufficiency of the Evidence

The Appellant specifically argues that the proof adduced at trial does not establish that his conduct constituted the crime of theft. Rather, he argues that the case should have "been a civil suit for an accounting" because the proof established that he had loaned the business money and was, therefore, entitled to reimbursement.

In considering this issue, we apply the rule that, where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict. *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

---

[1](...continued)
We will not consider this as part of the Appellant's sentence for review purposes, as it is conditioned upon the successful completion of one year of community corrections service and is not reflected on the judgment form.

The Appellant was convicted of theft of property, a class D felony. A person commits "theft of property" if, "with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (2003). Therefore, in order to obtain a theft conviction, the State must establish "(1) the defendant knowingly obtained or exercised control over property; (2) the defendant did not have the owner's effective consent; and (3) the defendant intended to deprive the owner of the property." *State v. Amanns*, 2 S.W.3d 241, 244-45 (Tenn. Crim. App. 1999).

At trial, the Appellant asserted the affirmative defense of claim of right, *i.e.*, that he acted in the honest belief that he had the right to obtain or exercise control over the bank account for reimbursement of personal funds he had loaned to the business. *See* Tenn. Code Ann. § 39-14-107(2) (2003). He contends that the proof clearly established that he advanced personal funds to the travel center and that business checks were written to reimburse these advances. He argues that this reimbursement procedure was an "open [and] obvious transaction" and, thus, became an established business practice. While several checks made payable to the Appellant and marked reimbursement were admitted into evidence, there was no proof, other than the Appellant's self-serving testimony, that he had advanced money into the business account. Ms. Bowers testified that, on one occasion the Appellant brought in money for a deposit and indicated that it was his personal money. On this occasion, the Appellant told Ms. Bowers that the cash "came from his house." The proof also established that the Appellant had access to cash funds as he assisted in the collection of monies from the various cash drawers of the business. However, she had only the Appellant's word as to the source of the funds. At trial, the Appellant failed to produce any evidence, *i.e.,* receipts or deposit slips, indicating that he had advanced money to aid the business. The trial court in its findings concluded that the Appellant "was not credible" and "had an ongoing scheme to defraud the business in several respects, in addition to the check for which the state brought charges."

The burden of raising an affirmative defense rests upon the defendant. Tenn. Code Ann. § 39-11-204(d). An affirmative defense must be established by a preponderance of the evidence. Tenn. Code Ann. § 39-11-204(e) (2003). Obviously by finding the Appellant guilty of theft, the trial court rejected the Appellant's assertion of claim of right over the bank funds. We agree that proof of the Appellant's claim of right to business funds in the amount of $ 6,500 was not established by a preponderance of the evidence. Tenn. Code Ann. § 39-11-204(e).

Returning to the issue of the sufficiency of the evidence, the proof established that the Appellant approached Ms. Bowers, the bookkeeper, and told her he needed a check in order to pay a bill for the business. Bowers signed check number 2982 in blank and gave it to the Appellant. The Appellant then took the check to Covington Pike Dodge and used it as a down-payment on a pickup truck, which was titled in his name. Testimony established that this was done without the knowledge or effective consent of the owner. Viewed in the light most favorable to the State, this evidence was more than legally sufficient to establish the elements of theft of property beyond a reasonable doubt. This issue is without merit.

## II.  Denial of Probation

Second, the Appellant challenges the trial court's denial of full probation.  After hearing the evidence, the trial court imposed the alternative sentence of community corrections.  While noting that the Appellant qualified for alternative sentencing, the trial court concluded that jail time was warranted by the crime and ordered the Appellant to serve ninety days in the county jail in conjunction with his placement in community corrections.  On appeal, the Appellant does not challenge the length of the sentence but, rather, challenges only the denial of full probation.

When the sentencing court properly considers the relevant sentencing considerations, this court conducts a *de novo* review with the presumption that the determinations made by the trial court are correct.  Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).  In this case, the presumption of correctness is applied as we find that the trial court properly considered the sentencing principles and relevant facts.

The defendant has the burden of establishing his suitability for full probation, even if the defendant is entitled to the statutory presumption of alternative sentencing.  *Id.*; *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996).  To meet the burden of establishing suitability for total probation, an appellant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant."  *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), *overruled on other grounds*, *State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000).  When deciding suitability for probation, although not controlling, the sentencing court should use the following criteria: (1) the nature and circumstances of the criminal conduct involved, Tennessee Code Annotated section 40-35-210(b)(4) (2003); (2) the potential or lack of potential for rehabilitation, including the risk that during the period of probation a defendant will commit another crime, Tennessee Code Annotated section 40-35-103(5) (2003); (3) whether a sentence of full probation would unduly depreciate the seriousness of the offense, Tennessee Code Annotated section 40-35-103(1)(B); and (4) whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes, Tennessee Code Annotated section 40-35-103(1)(B).  *Bingham*, 910 S.W.2d at 456.  Denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation.  *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).  Our supreme court encourages the grant of considerable discretionary authority to our trial courts in matters such as these.  *Ashby*, 823 S.W.2d at 171.  "It is not the policy or purpose of this court to place trial judges in a judicial straight-jacket in this or any other area, and we are always reluctant to interfere with their traditional discretionary powers."  *Id.*

Upon review, the record supports the trial court's denial of full probation.  The record demonstrates, as found by the trial court, that the Appellant was placed in a position of trust and abused his position by operating an "ongoing scheme to defraud the business."  The criminal conduct was not an isolated event but extended over a period of time.  At the sentencing hearing, Mike Allmand testified that the Appellant had taken a total of $ 46,020.41 from his business, which was later forced into bankruptcy.  We find that the facts and circumstances of this case are such that full probation is inappropriate.

**CONCLUSION**

After review, we find that the evidence is sufficient to support the Appellant's conviction for theft of property. Additionally, we find no error in the trial court's denial of full probation. Accordingly, we affirm the judgment of conviction and resulting sentence.

_____
DAVID G. HAYES, JUDGE