# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
January 23, 2024 Session

## STATE OF TENNESSEE v. JOHN D. BASKETTE

**Appeal from the Criminal Court for Hamblen County**
**Nos. 2019CR412, 2020CR08     Alex E. Pearson, Judge**

———————————————————

### No. E2023-00600-CCA-R3-CD

———————————————————

A Hamblen County jury convicted the Defendant, John D. Baskette, of attempted theft of property valued over $60,000 but less than $250,000. The trial court sentenced the Defendant to an effective five-year term, which was suspended to probation after six months of confinement. On appeal, the Defendant argues that the proof is legally insufficient to support his conviction. He also asserts that the trial court failed to charge the jury on the affirmative defense of a claim of right. Upon our review, we respectfully affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and KYLE A. HIXSON, JJ., joined.

P. Richard Talley and Ty Richard Talley, Dandridge, Tennessee, for the appellant, John D. Baskette.

Jonathan Skrmetti, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Kimberly L. Morrison, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

Between February and June of 2019, the Defendant entered into separate arrangements with three different people. The Defendant represented to each person that he would purchase farm equipment and then resell it for a profit, sometimes after making

repairs. The Defendant further stated that he would pay for some fraction of the purchase price, such as a half or a third, and the other person would do the same. The Defendant then affirmed that after he sold the equipment, the other person would be repaid his original investment plus a proportionate share of any profit.

The three victims involved in this case were Larry Mangum, Herbert Mayes, and Marvin Henegar. In February 2019, Mr. Mangum gave the Defendant $10,000, and Mr. Mayes tendered $30,000 to the Defendant later in June. In Mr. Henegar's case, he gave $29,397 to the Defendant on June 21, 2019, and asked the Defendant to execute a promissory note requiring the money to be repaid on or before September 30, 2019.

Shortly after receiving the monies, the Defendant claimed to have faced multiple personal hardships and informed the three victims that he needed additional time to complete the transactions. Mr. Henegar called, wrote, and texted the Defendant about the arrangement and requested the return of his money. Mr. Henegar met with the District Attorney General in December 2019 when the Defendant did not return his money. After the Defendant was indicted, he returned Mr. Henegar's money through a series of three payments between January and October 2020. When Mr. Henegar picked up the last check, he signed a document indicating that he "agreed to keep the matter private." Later, Mr. Henegar also signed an affidavit requesting that the charges against the Defendant be dismissed.

In Mr. Mangum's case, he gave the Defendant $10,000, and the Defendant said he would have a payout thirty to sixty days after the Defendant bought the equipment. Mr. Mangum did not hear from the Defendant after that time, but when he spoke with the Defendant some four months later, the Defendant told him the equipment had not been sold. The Defendant reassured him, however, that "it's going to be a profitable situation." Following the Defendant's indictment, the Defendant lawyer contacted Mr. Mangum and delivered a check to him. Mr. Mangum then signed a document stating that he had received the money on November 4, 2022, and requested that the case be dismissed.

Mr. Mayes testified that he loaned the Defendant $30,000 so that the Defendant could purchase some tractors. He said that he understood that the Defendant would also contribute money toward the purchase. At some point thereafter, Mr. Mayes requested that the Defendant return his money so that he could pay college tuition for his grandchildren. The Defendant replied, "I got our money, and I'll put the check in the bank." However, the Defendant did not return the money at that time. As with the other victims, Mr. Mayes received his funds through the Defendant's lawyer after the Defendant's indictment. Mr. Mayes also signed a document confirming that he had received his money and asked for the case to be dismissed.

2

Before the Defendant's indictment, each victim had contacted the District Attorney General's Office to report the Defendant and pursue charges against him. Bob Ellis, who was employed as a criminal investigator by the District Attorney General, subpoenaed the Defendant's bank records. He discovered that the Defendant had five accounts at four separate banks. Each of the Defendant's bank accounts showed minimal or negative balances and did not reflect all of the victims' money. Through his search, Investigator Ellis could not find any evidence that the Defendant had purchased any farm equipment.

The Hamblen County grand jury issued two separate presentments charging the Defendant with theft of property. The first presentment, which was returned on August 15, 2019, charged the Defendant with theft of property from multiple victims, including Mr. Mangum and Mr. Mayes. The second presentment was returned on January 13, 2020, and charged the Defendant with theft of property from Mr. Henegar. The trial court later entered an order consolidating the charges into a single count alleging theft of property valued at more than $60,000 but less than $250,000.

The case was tried on November 8, 2022. The State called as witnesses Investigator Ellis and the three victims to establish the facts recited above. After the close of the State's case-in-chief, the Defendant requested a special jury instruction on the claim of right affirmative defense provided in Tennessee Code Annotated section 39-14-107. Although the trial court found that the proof fairly raised the affirmative defense, it declined to instruct the jury because the Defendant failed to give pretrial notice as required by statute. *See* Tenn. Code Ann. § 39-11-204(c)(1), (d) (2018). The Defendant rested without further proof.

The jury found the Defendant guilty of the lesser-included offense of attempted theft of property valued over $60,000 but less than $250,000. It also assessed a fine in the amount of $10,000. The trial court later sentenced the Defendant to an effective term of five years that was suspended to probation after service of six months in custody.

The Defendant filed a timely motion for a new trial, which the trial court denied on April 3, 2023. Twenty-three days later, the Defendant filed a timely notice of appeal.

**ANALYSIS**

In this appeal, the Defendant raises two issues. First, he argues that the evidence is legally insufficient to support his conviction for attempted theft of property. He also asserts that the trial court erred in failing to instruct the jury on the affirmative defense of a claim of right as permitted by Tennessee Code Annotated section 39-14-107. We address each of these issues in turn.

3

## A. LEGAL SUFFICIENCY OF THE EVIDENCE

The Defendant first asserts that the proof is legally insufficient to support his conviction for attempted theft of property. Although he does not challenge that he obtained money from the victims, the Defendant argues that the State failed to prove that he did so without the victims' effective consent. He also contends that the State failed to prove that he intended to permanently deprive the victims of their money. In response, the State argues that the proof was legally sufficient to support each essential element of the crime. We agree with the State.

### 1. Standard of Appellate Review

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, "[w]hen making that determination, the prosecution is afforded the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *State v. Thomas*, 687 S.W.3d 223, 249 (Tenn. 2024) (citation and internal quotation marks omitted). To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury, as the trier of fact." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citation and internal quotation marks omitted).

### 2. Effective Consent

Tennessee Code Annotated section 39-14-103(a) (2018) provides that "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." And as charged in this case, a person commits criminal attempt who, "acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part[.]" Tenn. Code Ann. § 39-12-101(a)(2) (2018); *State v. Wooten*, No. W2022-00315-CCA-R3-CD, 2022 WL 16919957, at *6 (Tenn. Crim. App. Nov. 14, 2022), *perm. app. denied* (Tenn. Mar. 8, 2023).

4

The Defendant first argues that the State failed to prove that he did not have the victims' effective consent to obtain their money. More specifically, he contends that the victims' affidavits and trial testimonies demonstrate that they willingly entered into a business venture with him. The State responds that while the victims agreed to give money to the Defendant for specific purposes, no evidence shows that the Defendant used the funds for their agreed-upon purpose. It argues that because the Defendant deceived the victims regarding the purposes for which he needed their monies, he did not obtain the funds with their effective consent. We agree with the State.

Our General Assembly has defined "effective consent" as "assent in fact, whether express or apparent"; however, "[c]onsent is not effective when . . . [i]nduced by deception or coercion[.]" Tenn. Code Ann. § 39-11-106(a)(11) (2018). As relevant to this case, "[d]eception" means that a person knowingly "[c]reates or reinforces a false impression by words or conduct, including false impressions of fact, law, value or intention or other state of mind that the person does not believe to be true[.]" *Id.* § 39-11-106(a)(7)(A)(i).

The assumption underlying the Defendant's argument is that he cannot be held liable for attempted theft because (1) he had an agreement with each of the three victims to invest their monies in the purchase of farm equipment; and (2) he later returned their money. We respectfully disagree. This court has never held that the presence of a contract or agreement, by itself, provides some sort of criminal immunity to a defendant, and the mere presence of an agreement with a victim does not turn a criminal case into a "civil matter." Indeed, where a defendant deceives a contracting party into investing money where the defendant knows that no investment can or will be made, an essential element of the crime of theft—obtaining property without the owner's effective consent—may be satisfied. *See, e.g.*, *State v. Toth*, No. E2015-00022-CCA-R3-CD, 2016 WL 909106, at *14 (Tenn. Crim. App. Mar. 9, 2016) (affirming theft conviction where victims gave money to the defendant to invest in real estate, where the defendant never purchased real estate and did not return money after victims' demands), *perm. app. denied* (Tenn. Aug. 18, 2016).

The same is true with respect to other types of contracts and agreements as well. *See, e.g.*, *State v. Summers*, No. M2017-01030-CCA-R3-CD, 2018 WL 2230728, at *4 (Tenn. Crim. App. May 16, 2018) (affirming lack of effective consent when, despite a contract, the defendant obtained control over the victim's money with the intent to deprive her of it without intending to complete a computer program in return), *perm. app. denied* (Tenn. Sept. 14, 2018); *State v. Hutchinson*, No. E2010-01053-CCA-R3-CD, 2011 WL 1621997 (Tenn. Crim. App. Apr. 25, 2011) (affirming lack of effective consent through deception where defendant took victim's money to install a new roof, but where the defendant did not intend to perform and used the funds for other purposes, including gambling), *perm. app. denied* (Tenn. Aug. 25, 2011); *State v. Pauli*, No. M2002-01607-CCA-R3-CD, 2003 WL 21302991, at *9 (Tenn. Crim. App. June 5, 2003) (affirming lack

of effective consent through deception where the defendant ordered products from the victim, representing that the products were to be sold to various retailers while selling the merchandise at a loss to another company), *perm. app. denied* (Tenn. Oct. 27, 2003).

Viewing the evidence in a light most favorable to the State, the Defendant obtained money from the victims by telling them that he would use their money to purchase farm equipment for resale. However, no evidence showed that he deposited the funds or sought to make any investment in farm equipment. The Defendant also promised the victims that he would invest their money along with his own. However, the evidence showed that he had little to no money in his bank accounts at the time of each investment and, consequently, had no ability to fulfill his part of the promised agreements with the victims. When the victims demanded the return of their funds, he made excuses and delayed the return. In fact, the Defendant returned the respective investments only after he had been indicted. Proof of intent is often based on circumstantial evidence. *State v. Hall*, 682 S.W.3d 143, 157 (Tenn. 2019). From these circumstances, a rational juror could find that the Defendant did not intend to use the victims' money as he promised and that he deceived them with an investment scheme in order to obtain their funds.

The Defendant argues that the victims' affidavits show they consented to give their money to him. This argument respectfully misses the mark. The law requires more than a victim's actual consent; it requires his or her effective consent. This means that a victim's actual consent cannot have been induced by a defendant's deception. *See* Tenn. Code Ann. § 39-11-106(a)(11). Notably absent from any of the affidavits or testimony of the victims is any statement that they would still have contributed their own capital had they known that the Defendant would contribute none of his money and would purchase no farm equipment. We therefore conclude that a rational juror could find that the victims' consent to give the Defendant money was obtained by deception on the Defendant's part.

### 3. Intent to Deprive Owners of Property

The Defendant next argues that he had no intent to deprive the victims of their money. The Defendant asserts that his "actions manifest an intention to fulfill the terms of the investment agreements—and he has." He further maintains that the victims' desire to dismiss the charges against him demonstrates that he did not intend to deprive them of their funds permanently. The State responds that the proof supports the Defendant's intent to withhold the victims' money at least long enough to substantially diminish the value or enjoyment of the funds to the respective owners. We again agree with the State.

In relevant part, the General Assembly defined the term "deprive" as to "[w]ithhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner[.]" Tenn. Code Ann. § 39-

6

11-106(a)(9)(A). Notably, "the fact that the Defendant did not possess the owner's property for an extended period does not preclude a jury from finding that he possessed the requisite intent for theft." *State v. Hicks*, No. W2022-00920-CCA-R3-CD, 2023 WL 4230430, at *4 (Tenn. Crim. App. June 28, 2023) (internal quotation marks and citations omitted), *no perm. app. filed*. "The intent to deprive may be based solely upon circumstantial evidence, and a jury may infer a . . . defendant's intent from the surrounding facts and circumstances." *State v. Long*, No. W2018-01203-CCA-R3-CD, 2019 WL 1450405, at *2 (Tenn. Crim. App. Mar. 29, 2019) (internal quotation marks and citations omitted), *no perm. app. filed*.

As we observed above, the evidence in this case shows that the Defendant did not deposit the victims' funds or use their money to purchase farm equipment. After some time, each victim asked the Defendant to return their respective funds, and Mr. Mayes told the Defendant that he needed to pay college tuition for his grandchildren. Despite the requests, the Defendant kept the money, made excuses, and reimbursed the victims only after he was indicted. From this evidence, a rational juror could have determined that the Defendant intended to withhold the victims' money for such a time as to substantially diminish their enjoyment of it. *See Hicks*, 2023 WL 4230430, at *5 ("That the Defendant kept [the victim's] property for days—indeed, he did not commit to returning it until after he was contacted by law enforcement—is strong circumstantial evidence that he intended to withhold this property from [the victim] 'for such a period of time as to substantially diminish the value or enjoyment of the property.'"); *Hutchinson*, 2011 WL 1621997, at *5.

The Defendant seems to argue that because he had no intent to "permanently" deprive the victims of their money, he cannot be found guilty of theft. We respectfully disagree. As we have recognized, the statute does not require a defendant to intend to permanently deprive the owner of property before a theft can occur. *See Hicks*, 2023 WL 4230430, at *5; *State v. Harrison*, No. E2008-01082-CCA-R3-CD, 2010 WL 3238309, at *9 (Tenn. Crim. App. Aug. 17, 2010) (rejecting argument that "the evidence is insufficient to sustain his conviction because he did not intend to deprive the owner permanently of his property"), *no perm. app. filed*. Instead, a theft may also occur when, as here, the deprivation is "for such a period of time as to substantially diminish the . . . enjoyment of the property to the owner." Tenn. Code Ann. § 39-11-106(a)(9)(A); *State v. Johnston*, No. E1999-00496-CCA-R3-CD, 2001 WL 334298, at *4 (Tenn. Crim. App. Apr. 6, 2001) ("Additionally, the 'intent to deprive the owner of property' that is a necessary element of the crime of theft of property does not necessarily require an intent to deprive the owner of the property permanently. It is sufficient if the deprivation is 'for such period . . . as to substantially diminish the value or enjoyment of the property to the owner' or to 'use it . . . under circumstances that make its restoration unlikely.'"), *perm. app. denied* (Tenn. Mar. 11, 2002).

We pause to note that the proof viewed in a light most favorable to the State shows completed theft crimes. *See* Tenn. Code Ann. § 39-14-103(a); *State v. Amanns*, 2 S.W.3d 241, 244-45 (Tenn. Crim. App. 1999). However, "[i]t was within the province of the jury to instead convict the defendant of the lesser-included offense of attempted theft, and we cannot overturn a verdict by speculating as to how and why the jurors reached it." *State v. Loveless*, No. M2017-02048-CCA-R3-CD, 2018 WL 6601353, at *6 (Tenn. Crim. App. Dec. 14, 2018), *no perm. app. filed*. We conclude that the evidence is legally sufficient to sustain the Defendant's conviction for attempted theft of property valued at more than $60,000 but less than $250,000.

## B.    AFFIRMATIVE DEFENSE

The Defendant next argues that the trial court erred in failing to instruct the jury on the affirmative defense of a claim of right because the issue was raised by the evidence.[1] He also asserts that the State was aware of the existence of the affirmative defense because he submitted affidavits from all three victims well before trial. In response, the State argues that Tennessee Code Annotated section 39-11-204(d) requires that written notice of an affirmative defense be given to the State and filed with the clerk. The State asserts that because the Defendant provided no such notice here, the trial court properly declined to instruct the jury on the affirmative defense as argued by the Defendant. We agree with the State.

### 1.    Standard of Appellate Review

"Questions involving the propriety of jury instructions are mixed questions of law and fact," which this court reviews de novo with no presumption of correctness. *State v. Benson*, 600 S.W.3d 896, 902 (Tenn. 2020); *State v. Hollon*, 671 S.W.3d 561, 564 (Tenn. Crim. App. 2023).

### 2.    Notice Required for Affirmative Defenses

Our supreme court has recognized that "Tennessee makes a technical distinction between general defenses and affirmative defenses." *State v. Hawkins*, 406 S.W.3d 121,

---

[1]    Although the Defendant's brief refers to his requested affirmative defense as being a "claim of right," it clarifies that he sought an instruction under Tennessee Code Annotated section 39-14-107(2). Technically speaking, section -107(2) is not an affirmative defense based on a claim of right to the property as section -107(1) is, but "is applicable to those situations where the accused may know that the property belongs to another but acts in the honest belief that he or she is entitled to exercise control over the property." *State v. Franze*, No. 03C01-9812-CC-00417, 1999 WL 1080962, at *3 (Tenn. Crim. App., filed at Knoxville, Dec. 1, 1999).

129 n.9 (Tenn. 2013). General defenses are defined by statute and include well-known concepts such as self-defense, insanity, duress, and necessity. *See id.* at 129. The General Assembly has provided that when the evidence fairly raises a general defense, the trial court must charge that defense to the jury. Tenn. Code Ann. § 39-11-203(c) (2018). Once the general defense is submitted to the jury, the State bears the burden of showing beyond a reasonable doubt that the general defense does not apply. *State v. Cole-Pugh*, 588 S.W.3d 254, 260 (Tenn. 2019); Tenn. Code Ann. § 39-11-203(d).

Affirmative defenses are also defined by statute but differ from general defenses in important ways. For example, an affirmative defense may not be charged to the jury simply because the evidence fairly raises it. Instead, affirmative defenses also require that the defendant provide pretrial notice to the State of his or her intent to rely upon the defense. Tenn. Code Ann. § 39-11-204(c)(1), (d); *State v. Benson*, 600 S.W.3d 896, 906 n.6 (Tenn. 2020). Also, if the affirmative defense is submitted to the jury, it "must be proven by the defendant by a preponderance of the evidence." *Cole-Pugh*, 588 S.W.3d at 260; Tenn. Code Ann. § 39-11-204(e).

The requirement of pretrial notice is an important and distinguishing aspect of affirmative defenses. With respect to this pretrial notice, Tennessee Code Annotated section 39-11-204(c)(1) provides as follows:

> If a person intends to rely upon an affirmative defense, the person shall, no later than ten (10) days before trial, notify the district attorney general in writing of the intention, or at such time as the court may direct naming the affirmative defense or defenses to be asserted, and file a copy of the notice with the clerk.

The statute also provides that the trial court "may, for cause shown, allow late filing of the notice or grant additional time to the parties to prepare for trial or make other orders as may be appropriate." Tenn. Code Ann. § 39-11-204(c)(3).

Thus, as can be seen from its plain language, the statute addresses the fact, form, content, and timing of the notice, as well as its service and filing. In summary, these requirements are as follows:

- **Fact of Notice:** The defendant must provide notice of an intention to rely upon an affirmative defense.

- **Form of Notice:** The defendant's notice must be in writing.

9

- **Content of Notice:** The defendant's written notice must name the affirmative defense to be asserted.

- **Timing of Notice:** The defendant's written notice must be made and filed pretrial and no later than ten (10) days before trial, unless the court directs another time or allows a late filing of the notice.

- **Service of Notice:** The defendant's pretrial, written notice naming the affirmative defense to be asserted must be made to the district attorney general.

- **Filing of Notice:** The defendant must file with the trial court clerk a copy of the written notice to the district attorney general that names the affirmative defense to be asserted.

Lest there be any doubt as to the importance of the pretrial, written notice requirement, the General Assembly *twice* conditioned assertion of an affirmative defense upon this notice being given. *See* Tenn. Code Ann. § 39-11-204(c)(2) ("Except as provided in this title, if there is a failure to comply with this subsection (c), the affirmative defense may not be raised"); -204(d) ("The issue of the existence of an affirmative defense may not be submitted to the jury unless it is fairly raised by the proof *and* notice has been provided according to subsection (c)." (emphasis added)). Importantly, a defendant who does not provide this pretrial, written notice may still testify about the facts giving rise to the affirmative defense. However, in that circumstance, the trial court has no authority to submit instructions on the affirmative defense itself to the jury. *See* Tenn. Code Ann. § 39-11-204(c)(2), (d).

In this case, the Defendant argues that the trial court had an obligation to instruct the jury on the affirmative defense of a claim of right. Tennessee Code Annotated section 39-14-107(2) (2018) provides, as an affirmative defense, that the defendant "[a]cted in the honest belief that the person had the right to obtain or exercise control over the property or service as the person did[.]" He asserts that because the proof fairly raised the presence of this defense, the trial court had an obligation to so charge the jury to provide "a correct and complete charge of the law." We respectfully disagree.

The record contains no written document from the Defendant to the district attorney general naming the affirmative defense to be asserted. As importantly, the record contains no copy of any such notice that was filed with the trial court clerk. *See State v. Conrad*, No. W1999-00650-CCA-R3-CD, 2000 WL 33288751, at *4 (Tenn. Crim. App. June 28, 2000) (concluding that an affirmative defense was not properly raised, in part, when "[t]he trial court clerk's technical record filed as part of the appellate record reflects no such

10

filing" of the notice tendered to the district attorney), *perm. app. denied* (Tenn. Dec. 27, 2000). From our review of the record, the first time the Defendant mentioned the possibility of asserting the affirmative defense was after the close of the State's case-in-chief. This midtrial oral request simply did not comply with the notice provisions required by statute.

The Defendant's failure to comply with the statutory notice provisions is important. The trial court correctly instructed the jury on the essential elements of theft of property, and it expressly defined "effective consent" for the jury.[2] The Defendant's claim that he had an honest belief to exercise control over the victims' money was not, as he supposes, another factor in assessing the victims' effective consent—it is a specifically identified affirmative defense established by the General Assembly. *See* Tenn. Code Ann. § 39-14-107. Thus, far from the trial court having a duty to charge the jury on the honest belief affirmative defense, it had *no authority* to do so, at least in the absence of proper notice to the State or a showing of cause to excuse the lack of notice. *See* Tenn. Code Ann. § 39-11-204(d); *State v. Parris*, 236 S.W.3d 173, 188 (Tenn. Crim. App. 2007) ("For a trial court to instruct a jury on an affirmative defense the Defendant need only 'fairly raise' the issue *and* provide notice of the affirmative defense." (emphasis added)).

In response, the Defendant argues that section 39-11-204(c) does not prescribe the form for notices of anticipated affirmative defenses. He asserts, therefore, that his submission of the victims' affidavits provided constructive notice of the affirmative defense and satisfied the "the fundamental purpose" of the notice requirement.[3] We again respectfully disagree.

Contrary to the Defendant's assertion, section 39-11-204(c)(1) does prescribe the form and content of the notice it requires. In plain language, the statute provides that the notice be in writing and that it "nam[e] the affirmative defense or defenses to be asserted[.]"

---

[2] In his brief, the Defendant also asserts that the trial court "failed to provide any more general instruction that informed the jury as to the legal effect, if any, of finding that the Invested Funds were given to [the Defendant] voluntarily by the Investors." It is unclear whether this argument is related to his issue regarding the affirmative defense or whether it is a separate attack on the jury instructions as a whole. If it is the latter, we find that he has waived plenary review of this issue as he did not present this issue to the trial court in his motion for a new trial. *E.g.*, *State v. Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 4552193, at *3 (Tenn. Crim. App. July 14, 2023) ("Ordinarily, before a party can challenge the admission of evidence on appeal, the party must have preserved the issue in the trial court. To preserve an issue, the party should first assert a timely objection identifying a specific ground. The party then must later raise that issue in a motion for a new trial. Otherwise, the party waives the issue on appeal and cannot seek plenary review." (citations omitted)), *no perm. app. filed*.

[3] We note that the affidavit from Mr. Mangum was executed only four days before the trial began on November 8, 2022. As such, even if this affidavit provided adequate notice to the State—and it did not—the notice was still untimely. *See* Tenn. Code Ann. § 39-11-204(c)(1) (requiring written notice be made and filed "no later than ten (10) days before trial").

11

By requiring the Defendant to name the affirmative defense in the written notice, the statute requires actual notice to the State of what defense is being asserted. A lesser form of notice where the State must correctly guess whether and to what extent an affirmative defense is being asserted simply does not satisfy the statute's plain language.

That is the exact problem for the Defendant in this case. None of the victims' affidavits purported to name the affirmative defense or defenses to be asserted, whether by description, statutory citation, or otherwise. Nor is the assertion of an honest-belief affirmative defense obvious from the contents of the affidavits themselves. At best, the affidavits purported to show that the victims gave their actual, if not effective, consent for the Defendant to invest their money in farm equipment as the parties agreed. However, the affidavits did not show or even suggest that the Defendant honestly believed that he could obtain their money and either fail to invest it or use it for other purposes. As such, not only did the affidavits fail to strictly comply with the notice requirement, but they also required the State to guess as to whether and to what extent the Defendant was actually asserting an affirmative defense under section 39-14-107.[4] Accordingly, we conclude that the Defendant was not entitled to a jury instruction on his requested affirmative defense.

**CONCLUSION**

In summary, we hold that the evidence is legally sufficient to support the Defendant's conviction for attempted theft of property. We also hold that the Defendant was not entitled to a jury instruction on the affirmative defense provided by Tennessee Code Annotated section 39-14-107(2) because he failed to give and file pretrial, written notice to the district attorney general naming the affirmative defense to be asserted. We respectfully affirm the judgment of the trial court.



TOM GREENHOLTZ, JUDGE

---

[4]     To avoid similar issues in the future, defendants may consider providing this notice through a separate, properly-captioned document that names the affirmative defense to be asserted. *Cf. State v. Patterson*, 538 S.W.3d 431, 438 (Tenn. 2017) ("With regard to the form of the notice, this Court has commented that the practice of embedding information inside an unrelated document is problematic and has instructed that the filing of separate documents properly captioned is to be preferred." (citation and internal quotation marks omitted)).