IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 8, 2026

**STATE OF TENNESSEE v. SCOTT BRADLEY PRICE**

**Appeal from the Circuit Court for Madison County**
No. 24-542    Donald H. Allen, Judge

_____

**No. W2025-00615-CCA-R3-CD**

_____

The Defendant, Scott Bradley Price, was convicted by a Madison County Circuit Court jury of theft of property valued at $2,500 or more but less than $10,000 and was sentenced by the trial court as a Range II offender to eight years in the Tennessee Department of Correction. On appeal, the Defendant challenges the sufficiency of the evidence and argues that the trial court erred in not instructing the jury on unauthorized use of a vehicle as a lesser-included offense. We conclude that the evidence is sufficient to sustain the jury's verdict. We further conclude that the trial court erred in not instructing the jury on the unauthorized use of a vehicle as a lesser-included offense, but that the failure to charge the lesser-included offense was harmless beyond a reasonable doubt because no reasonable jury would have convicted the Defendant of the lesser-included offense under the facts of this case. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and CAMILLE R. MCMULLEN, J., joined.

Jessica F. Butler, Assistant Public Defender-Appellate Division, Franklin, Tennessee (on appeal), and Austin Bethany, Assistant Public Defender, Jackson, Tennessee (at trial), for the appellant, Scott Bradley Price.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General and Kelly M. Telfeyan, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Matthew Floyd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## FACTS

This case arises out of the March 30, 2024, theft of a Tennessee Department of Transportation ("TDOT") vehicle, a 2012 Ford F-150 king cab pickup truck. A TDOT supervisor discovered the truck missing from a TDOT lot on State Street in Jackson and relayed its location, via its GPS system, to Jackson Police Department ("JPD") officers. Several hours after the truck had been removed from the TDOT lot, officers located it behind a service station in Jackson. When the officers arrived, two individuals were sitting in the rear seat, and the Defendant was walking from the service station toward the truck. The Defendant had in his pocket the truck's ignition key and the TDOT fuel card for the truck.

The Defendant admitted he had been driving the truck but said he had borrowed it from a friend named John, who told the Defendant that he had purchased the truck at auction. The Defendant was arrested and subsequently indicted for theft of property valued at $10,000 or more but less than $60,000, a Class C felony. At the conclusion of his trial, a Madison County Circuit Court jury convicted the Defendant of theft of property valued at $2,500 or more but less than $10,000, a Class D felony.

## State's Proof

E.B. Conatser, Jr., a TDOT operations technician supervisor with seven years of experience as an operations technician supervisor and almost twenty-eight years as a TDOT employee, testified as follows: Each TDOT vehicle has a green government license plate and the TDOT logo on both the driver's door and the passenger's door. All TDOT vehicles are also outfitted with the "Samsara GPS device[,]" which allows the vehicles to be tracked through the Samsara application. Each TDOT employee has an identifying key fob that works interactively with the Samsara GPS device, which made it possible for Mr. Conatser to know which employee was in which vehicle at any given time. When not in use, the vehicles were stored either at the TDOT office on Benchmark Place, or at "an old TDOT lot" with a shop building on State Street in Madison County. The State Street property was fenced, and the gate was locked daily. On weekends, the gate was kept locked.

At approximately 9:30 p.m. on Saturday, March 30, 2024, Mr. Conatser was notified by another supervisor, who had been alerted by the police, that a TDOT truck from the State Street lot had been found jack-knifed on a four-wheeler trail in the woods in the South Forked Deer area. Mr. Conatser met police officers at that location, determined that the truck could not be retrieved that night, and then went to the State Street lot to check the gate. He found the gate locked, but noticed that a second vehicle, the 2012 Ford F-150 king cab at issue in this case, was missing. He contacted his supervisor, who instructed

him to call the police. As he was tracking the truck in real time via the GPS system, he saw the truck stopped with its engine running, then moving, and then stopped again behind the Speedway service station at Christmasville Road and Sand Pebble Drive in Madison County. He relayed the truck's position to the police dispatcher and met officers at that location.

Mr. Conatser identified GPS photographs of the truck's movements, which were admitted as a collective exhibit. According to the GPS, the truck first began moving at 2:32 p.m. From 4:16 to 4:19 p.m., the truck went toward a tree line and exited the TDOT lot through a hole in the fence near a shop building. Mr. Conatser described the further movement of the truck that afternoon and evening, which included trips to the South Forked Deer River area where the jack-knifed truck was located and trips to the area around the State Street TDOT lot.

Mr. Conatser identified photographs of the stolen truck at Speedway that showed, among other things: the TDOT logos on the doors stating "For Official Use Only" ; another TDOT logo on the tailgate; the light bar from the top of the cab, which had been removed and placed with its wires cut in the bed of the truck; and the state radio, which was still in place but had its wires cut. According to Mr. Conatser, the value of the truck alone was over $10,000, which did not include the modifications made by TDOT. He consulted with the TDOT garage manager and learned it was $3,000 to $4,000 to add the light bar and an additional $1,500 for the state radio. When recovered at the Speedway, the truck had dents on its front end that had not been there before.

Mr. Conatser further testified as follows: TDOT employees were not working on Saturday, and "there was no reason for any TDOT employee to be driving the vehicle at that time." He had never met the Defendant, the Defendant was not a TDOT employee, and the Defendant did not have permission to have the truck, its fuel card, or its ignition key. TDOT "Fuelman" cards were issued by the State to purchase fuel for use in a TDOT vehicle, were specific to a vehicle, and were usually kept in the vehicle's glove box or center console.

On cross-examination, Mr. Conatser testified as follows: the key to a TDOT truck was sometimes stored in the glove box, the toolbox, or the console. TDOT trucks were not inspected daily but were inspected during oil changes and other maintenance performed at the TDOT garage. During those inspections, the lights, brakes, and windshield wipers were tested, and any damage to the vehicle was documented. He did not have documentation of the maintenance performed on the truck, but the garage manager did. He could not recall the truck's mileage. When asked if TDOT trucks were ever decommissioned, he replied that they were "surplused, and all that's handled in Nashville." He did not know how the

decommissioned trucks were sold, or whether they were sold to private individuals. He "pulled up the value of the truck with the garage manager."

On redirect examination, he testified as follows: Before a decommissioned vehicle was sent to Nashville, the TDOT logos, the light bar, and the state radio were removed at the TDOT garage. To determine the value of the truck, he not only talked to the garage manager but also researched online, where the value was listed as "like 12 or more." That value did not include the $5,000 worth of modifications. On recross-examination, he testified that he did not have "anything on paper" to show the truck's value and did not have a photograph of the truck's mileage.

JPD Officer Colton Page testified as follows: When he arrived at the Speedway location, he saw the truck "backed in behind" a barbeque restaurant and the Defendant walking toward the truck. The Defendant saw him and "began to veer off" toward a different vehicle parked two spots away from the truck. Officer Page got out of his patrol vehicle, and the Defendant, talking aloud to himself, said something about having left his keys in the service station and began walking toward the service station. At that point, Officer Page asked the Defendant to come to him and provide his identification, and the Defendant complied. As Officer Page was talking to the Defendant, a woman named Christina Wilde approached them. At the same time, two other police officers were dealing with the individuals in the back seat of the truck. Officer Page found in the Defendant's left pocket the Fuelman card and the truck ignition key. When he removed the ignition key from the Defendant's pocket, the Defendant said, "yeah, that's the key right there."

On cross and redirect examination, Officer Page acknowledged that the Defendant was cooperative, and that he admitted that he had been driving the truck.

### Defendant's Proof

JPD Investigator Wade Arnold testified on direct and cross-examination as follows: John Blackwell was developed as a suspect, and the police department had active arrest warrants for "John Blackwell for the actual theft of the trucks." The Defendant was charged with the theft of the truck at issue in this case based on his possession of that truck. The Defendant told Investigator Arnold that he was aware that Mr. Blackwell "had stolen stuff before."

Christina Wilde, who said she was the Defendant's fiancée, testified as follows: Early on the evening of March 30, 2024, the Defendant borrowed the truck from his friend John to take Ms. Wilde's godson to the store. Ms. Wilde overheard John telling the Defendant that he had bought the truck at an auction, and she saw Mr. Blackwell giving

- 4 -

the truck's key to the Defendant. She did not know that the truck had been stolen, and she did not know John's last name at that time.

On cross-examination, Ms. Wilde testified as follows: On March 30, 2024, she, the Defendant, and Mr. Blackwell were homeless and living in an abandoned building next to the TDOT State Street lot. Mr. Blackwell was not working. She saw Mr. Blackwell with two trucks that day: the truck at issue in the case, and later a second truck. She indicated that Mr. Blackwell's brother had assisted Mr. Blackwell in his purchase of the trucks. Mr. Blackwell did not accompany them to the Speedway, and she did not say anything to Officer Page about Mr. Blackwell's having been inside the Speedway store. She did not find it suspicious that the truck had TDOT logos on it because her brothers had bought police vehicles at auction that still had police stickers on them. The Defendant knew that Mr. Blackwell was homeless and unemployed.

### State's Rebuttal Proof

Officer Page identified a portion of his body camera video from the incident, which was admitted as an exhibit, and testified as follows: Ms. Wilde told him that the truck belonged to someone named John. Ms. Wilde said she did not know where John was at that time, but that John had been in the store approximately forty-five minutes earlier. When Ms. Wilde said that Mr. Blackwell had been in the store earlier, she motioned toward the Speedway store.

### ANALYSIS

### I. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to sustain his conviction, arguing that the State failed to prove that he had the requisite intent to commit a theft and failed to establish the value of the truck.

When the sufficiency of the evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-91 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

Therefore, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of review for the sufficiency of the evidence is the same whether the conviction is based on direct or circumstantial evidence or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). Thus, "three elements must be proven to establish theft under our statute: '(1) the defendant knowingly obtained or exercised control over property; (2) the defendant did not have the owner's effective consent; and (3) the defendant intended to deprive the owner of the property.'" *State v. Gentry*, 538 S.W.3d 413, 422 (Tenn. 2017) (quoting *State v. Amanns*, 2 S.W.3d 241, 244-45 (Tenn. Crim. App. 1999)). As relevant to this case, deprive means to "[w]ithhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner[.]" Tenn. Code Ann. § 39-11-106(a)(9)(A). "Possession of recently stolen goods gives rise to an inference that the possessor has stolen them." *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995) (citing *Bush v. State*, 541 S.W.2d 391, 394 (Tenn. 1976)).

In a theft case, the stolen property's value must be determined to establish the grade of the offense. S*ee* Tenn. Code Ann. § 39-14-105 (a); *see also State v. Sumpter*, No. W2021-00119-CCA-R3-CD, 2022 WL 946570, at *11 (Tenn. Crim. App. Mar. 30, 2022); *State v. Moats*, No. E2019-02244-CCA-R3-CD, 2020 WL 6392483, at *3 (Tenn. Crim. App. Nov. 2, 2020). The value of property is "[t]he fair market value of the property or service at the time and place of the offense[,]" or "[i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense[.]" Tenn. Code Ann. § 39-11-106(a)(39)(A)(i), (ii). It is the jury's prerogative, based on the evidence presented, to determine the fair market value of stolen items. *State v. Hamm*, 611 S.W.2d 826, 828-29 (Tenn. 1981); *see also* Tenn. Code Ann. § 39-11-115 ("Whenever a determination of value is necessary to assess the class of an offense in this

code or the level of punishment, the determination of value shall be made by the trier of fact beyond a reasonable doubt.").

The Defendant first contends that the State failed to establish that he had the intent to deprive the owner of the property, arguing that he is, at most, guilty of unauthorized use of a vehicle because he believed that Mr. Blackwell was the truck's owner. In support, the Defendant cites the lack of any evidence that he removed the truck from the TDOT lot, Ms. Wilde's testimony that the Defendant borrowed the truck from Mr. Blackwell, and Officer Page's testimony that the Defendant was cooperative with the police.

However, viewed in the light most favorable to the State, the evidence establishes that the Defendant, knowing that Mr. Blackwell was unemployed, homeless, and had stolen items in the past, took possession of a fully outfitted TDOT truck, complete with TDOT logos designating the truck for official use only, a government license plate, light bar, state radio, and a state-issued fuel card. Further, when Officer Page arrived, the Defendant, who had the truck backed into a parking space behind a business, began walking in a different direction to avoid the officer. "The intent to deprive may be based solely upon circumstantial evidence, and a 'jury may infer a . . . defendant's intent from the surrounding facts and circumstances.'" *State v. Stewart*, No. M2019-01421-CCA-R3-CD, 2020 WL 6494838, at *11 (Tenn. Crim. App. Nov. 5, 2020) (omission in original) (quoting *State v. Roberts*, 943 S.W.2d 403, 410 (Tenn. Crim. App. 1996)). Based on the evidence, a rational jury could reasonably infer that the Defendant was aware that the truck was stolen and, thus, intended to deprive the owner of the property when he took possession of the truck from Mr. Blackwell.

The Defendant additionally contends that the State failed to prove the value of the truck, arguing that "[n]one of Mr. Conatser's statements about his secondhand knowledge were sufficient to establish the truck's value." The Defendant points out that Mr. Conatser did not know the truck's mileage, did not have documentation of the truck's maintenance, and provided no written proof to support his testimony that the truck was valued at $12,000 or more on the unidentified website he consulted in conjunction with the garage manager. The Defendant asserts that the jury "clearly rejected [Mr. Conatser's valuation]" and argues that "absent any proof of the truck's value," the jury improperly speculated as to the truck's value by finding that it was worth "less than $10,000 but greater than $2,500."

We respectfully disagree. Mr. Blackwell, a TDOT supervisor whose testimony established that he was familiar with the truck, testified that he checked with the garage manager and online for his valuation of the truck. In addition, the State introduced photographs of the truck and its condition at the time of its recovery. We agree with the State that Mr. Conatser's testimony, combined with the photographs of the truck, provided a sufficient basis for the jury's valuation of the truck. Although Mr. Conatser estimated

the truck's value as $12,000 or more, the jury, which saw the photographs, was entitled to reject that estimate and to find that the truck's actual value was lower. *See*, *e.g.*, *State v. Gaul*, No. E2021-00734-CCA-R3-CD, 2023 WL 2238685, at \*26 (Tenn. Crim. App. Feb. 27, 2023) (finding that jury was entitled to find that a firearm's value was higher than the estimate provided by the firearm's owner based on the additional proof of the receipt for the firearm). We, therefore, conclude that the evidence is sufficient to sustain the Defendant's conviction for theft of property valued at $2,500 or more.

## II. Lesser-Included Offense Instruction

As his next issue, the Defendant contends that the trial court erred in not instructing the jury on unauthorized use of a vehicle as a lesser-included offense. The Defendant acknowledges that he did not make the request in writing, but argues, among other things, that the trial court's denial of his oral request for the instruction constitutes plain error because unauthorized use of a vehicle is a lesser-included offense of theft, there was evidence that reasonable minds could accept as to the existence of the lesser-included offense, and the evidence viewed in a favorable light to the Defendant was legally sufficient to support a conviction for the lesser-included offense. The Defendant asserts that the trial court failed to conduct the *State v. Burns*, 6 S.W.3d 453, 469 (Tenn. 1999), analysis to determine if the lesser-included offense instruction was warranted, failed to construe the evidence in the liberal light required by *Burns*, and "appeared to misapprehend either the proof, the elements of the offense, or both." The State argues that the trial court did not plainly err when it denied the Defendant's oral request for the lesser-included offense instruction.

"It is well-settled that a defendant has a constitutional right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *Dorantes*, 331 S.W.3d at 390. Furthermore, trial courts have a duty to give "a complete charge of the law applicable to the facts of the case." *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (citing *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)). "An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law." *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005). "Challenges to jury instructions present mixed questions of law and fact; therefore, we review challenged instructions de novo without a presumption of correctness." *State v. Smith*, 492 S.W.3d 224, 245 (Tenn. 2016) (citing *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001)).

In *Burns*, our supreme court held that trial courts are required to "'instruct the jury on all lesser-included offenses if the evidence introduced at trial is legally sufficient to support a conviction for the lesser offense.'" *Burns*, 6 S.W.3d at 464 (quoting *State v.*

*Langford*, 994 S.W.2d 126, 128 (Tenn. 1999)). Tennessee Code Annotated section 40-18-110 (a), which incorporates the *Burns* test for a lesser-included offense, provides that the trial court

> shall not instruct the jury as to any lesser included offense unless the judge determines that the record contains any evidence which reasonable minds could accept as to the lesser included offense. In making this determination, the trial judge shall view the evidence liberally in the light most favorable to the existence of the lesser included offense without making any judgment on the credibility of evidence. The trial judge shall also determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense.

In the absence of a written request, the lesser offense instruction is waived, and "the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal." *Id.* at § 40-18-110(c); *see also State v. Fayne*, 451 S.W.3d 362, 368 (Tenn. 2014); *State v. Wilson*, 211 S.W.3d 714, 720 (Tenn. 2007); *State v. Page*, 184 S.W.3d 223, 230-31 (Tenn. 2006).

However, because a defendant has a constitutional right to a correct and complete charge of the law applicable to his case, we may review to determine if the trial court's failure to instruct on the lesser-included offense constitutes plain error. *State v. Banks*, 271 S.W.3d 90, 126 (Tenn. 2008); *Wilson,* 211 S.W.3d 714, 720-21 (Tenn. 2007); *Page,* 184 S.W.3d at 230-31. An issue rises to the level of plain error only when all five of the following factors are met: (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary "to do substantial justice." *State v. Smith,* 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson,* 899 S.W.2d 626, 641-42 (Tenn. Crim App. 1994)). To rise to the level of plain error, "[a]n error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding." *Page,* 184 S.W.3d at 231.

This court has held that the unauthorized use of a vehicle, or "joyriding," is a lesser-included offense to the theft of a vehicle. *See State v. Brooks*, 909 S.W.2d 854. 860 (Tenn. Crim. App. 1995) (noting that the only difference between theft of a vehicle and unauthorized use of a vehicle is the defendant's intent); *State v. Harrison*, No. E2008-01082-CCA-R3-CD, 2010 WL 3238309, at \*12 (Tenn. Crim. App. Aug. 17, 2010) (citing *State v. Gamble*, No. 03C01-9812-CR-00042, 2000 WL 45718, at \*6-7 (Tenn. Crim. App. Jan. 21, 2000)).

As previously stated, the trial court is obligated to instruct the jury on a lesser-included offense if: (1) any evidence exists that reasonable minds could accept as to the lesser-included offense, and (2) if the evidence, when viewed liberally in the light most favorable to the existence of the lesser-included offense, is legally sufficient to support a conviction for the lesser-included offense. *Burns*, 6 S.W.3d at 469.

In denying the oral request for the lesser-included offense instruction, the trial court concluded that an instruction on unauthorized use of a vehicle was not warranted under the proof:

> Okay. Well you can argue that [the Defendant's ignorance as to the true owner of the truck] to the jury. You can argue that he didn't intend to deprive TDOT of its property. You can argue that, but I'm not going to give that instruction, because, again, unauthorized use of an automobile is when a person has no intent to deprive the owner. That's the key, the owner of the vehicle. The owner is TDOT. John was not the owner of the vehicle. He may have stolen the vehicle, and he may have given it to [the Defendant], but he's not the owner of the vehicle. So I'm not going to give the joyriding or unauthorized use of an automobile. I just don't think it's fairly raised by the proof in this case.

We agree that the trial court appears to have misapprehended the elements of the offense of unauthorized use of a vehicle and/or failed to view the evidence in the light most favorable to the existence of the lesser-included offense. Unauthorized use of a vehicle occurs when someone "takes another's automobile, airplane, motorcycle, bicycle, boat or other vehicle without the consent of the owner and the person does not have the intent to deprive the owner thereof." Tenn. Code Ann. § 39-14-106. Here, the trial court focused on the fact that the truck belonged to TDOT rather than to Mr. Blackwell, in effect ignoring the Defendant's argument that he could not have had the intent to deprive the owner of the truck because he was unaware that TDOT was the owner. The Defendant's entire defense theory hinged on his claim that he was ignorant as to the true owner of the truck, and he provided proof that reasonable minds could have accepted in support of that theory. Further, when viewed in the liberal light required by *Burns*, there was sufficient evidence to support a conviction on the lesser-included offense of unauthorized use of a vehicle. We, thus, conclude that the trial court erred by not instructing the jury on the unauthorized use of a vehicle as a lesser-included offense.

> The failure to give an instruction on an offense that is, in fact, a lesser-included offense and is supported by the evidence is a non-structural constitutional error. When such a failure occurs, a new trial must be granted

unless the reviewing court determines that the error was harmless beyond a reasonable doubt.

*Banks*, 271 S.W.3d 126 (citations omitted). The harmless error inquiry for when a lesser-included offense instruction was improperly omitted is "whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial." *State v. Allen*, 69 S.W.3d 181, 191 (Tenn. 2002) (citation omitted). "In making this determination, a reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." *Id.*

To succeed on a claim that the trial court committed plain error by not instructing the jury on a lesser-included offense, the defendant bears the burden of showing "a reasonable probability that a reasonable jury would have convicted the defendant of the lesser-included offense instead of the charged offense." *State v. Martin*, 505 S.W.3d 492, 505 (Tenn. 2016) (internal quotation and citation omitted). "If no reasonable jury would have convicted the defendant of the uncharged lesser-included offense rather than the offense for which the defendant was convicted, then the failure to charge is harmless beyond a reasonable doubt." *Banks*, 271 S.W. 3d at 126) (citing *State v. Locke*, 90 S.W.3d 663, 675 (Tenn. 2002)).

Based on our review of the record, we conclude that no reasonable jury would have convicted the Defendant of the unauthorized use of a vehicle under the facts presented in this case, where the Defendant took possession of a clearly marked TDOT vehicle from a homeless, unemployed friend, had possession of a TDOT fuel card in his pocket that had been kept in the truck, and then attempted to avoid the police by hiding the vehicle behind a business and walking toward a store when approached by a police officer. If any one of the factors required for plain error review "is not satisfied, we need not consider the remaining factors." *Martin*, 505 S.W.3d at 507 (citations omitted). Because the Defendant cannot show that a substantial right of his was adversely affected by the omission of the lesser-included offense instruction, we conclude that the Defendant has not established that he is entitled to plain error relief.

## CONCLUSION

Based on our review, we affirm the judgment of the trial court.

s/ JOHN W. CAMPBELL
JOHN W. CAMPBELL, SR., JUDGE

- 11 -